Louis Bouabid v. Charlotte-Mecklenburg School System And we are pleased to hear from you, Escolade. Happy to hear from you. Thank you, Your Honor. May it please the Court, my name is Kelly Escolade. I'm here today to argue why the Administrative Hearing Officer's findings are not entitled to deference. I ask the Court today to reverse the District Court's decision and make a decision on this matter, or in the alternate, remand with instructions. Specifically, I ask that this Court rule that the District Court erred when it found there was no genuine dispute over a material fact, the District Court erred when it ruled that the ALJ's final decision was entitled to deference, and that the District Court erred when finding the ALJ's remedy was appropriate. The issues I'm going to address today are whether summary judgment was proper when there was a genuine dispute of material facts and whether the District Court erred as a matter of law when it ruled that the Administrative Law Judge's final decision was entitled deference when the decision was not regularly made. Under the IDA, fact-finding is critical. As many of the legal issues resolve around questions of fact, because the ALJs are charged via their fact-finding duties with determinations that go to the very heart of the substantive rights of children with disabilities under the IDEA, it's imperative that ALJs write decisions that make findings of facts on all of the facts relevant to the legal issues presented at the Administrative Hearing. The Fourth Circuit views questions as to the appropriateness of a child's IEP as questions of fact. That's out of G.V. Fort Bragg. The standards that we look at is Board of Education v. Raleigh, which addresses the proper role for a District Court reviewing a state administrative decision in an IDEA case. Let me ask you a question regarding the regularly made. There was a hearing process for fact-finding norms. I take it your biggest problem or major problem you have is that this is rather lacking in detail. It's rather brief. And you think that should be a basis for saying it was not regularly made? That's right, Your Honor. We do believe that there is a case that's pretty much on point here, and that's J.P. And in J.P., it clarifies what constitutes a regularly made decision. In that case, following a hearing in which a witness testimony and evidence was presented by both sides, the hearing officer issued a 25-page written opinion that 1. summarized witness testimony, 2. outlined applicable legal standards, and 3. presented the hearing officer's findings of facts and legal conclusions. What about the standards? I'm sorry, Your Honor. Can you repeat that? Well, as I read that case, I'll put it directly to you. Our case law suggests that the level of detail required of a hearing officer is relatively low. So, is this too low in your view, and if so, why? So, Your Honor, you are correct there. I do believe this is too low in the fact that this case presents with lots of cursory and conclusive statements throughout it, as well as the findings of facts in this case did not even speak to some of the legal issues that were raised, I'm sorry, to some of the issues that were raised specifically related services. This case never spoke, the findings of facts never even spoke to that, and that was an issue that was raised throughout the court. I do find that the findings... This, I assume, would relate directly to the deference by the district court to the ALJ's findings. If I'm remembering this correctly, other than credibility determinations, the district court did its own analysis of the record and did not defer on most of the issues to the findings of the ALJ, but made its own, stated its own. Your Honor, I don't believe that the district court stated its own because it ruled on a summary judgment motion where it looked at the findings of facts, and if you look at the ALJ's order, I'm not sure that you can make a connection between the legal issues and the findings of facts and how the judge came to that conclusion. The only ones that I do think that she even spoke to... I'm not confusing this with another case. The parties chose not to introduce any additional evidence, which they could do if they wished. That's correct, Your Honor, but I do want to point out that in the district court's order, one of the parts that the district court also leaves out is related services. They don't speak to it, and so while they even have the record, there was nothing remotely in their order that spoke to related services, which tells me that if a de novo review was done under the district court, their ruling would have spoken to these related services. I've sat on a lot of these cases, and it seemed to me that the ALJ did a lot of things right. We've made a point in our cases saying that the ALJ's findings must be decent, but they don't need to be perfect, and the ALJ had a 10-day hearing, witnesses and exhibits, and the actual findings of the ALJ were found in favor of you on two issues, and the ALJ listed the witnesses that it found credible, and those it did not. And it made detailed findings of fact on a number of issues, and if the ALJ had just given this the back of the hand, that would be one thing, but it seemed that as these ALJ hearings and findings go, this is on the more thorough end of the spectrum. As I say, a 10-day hearing, that's no brush off on the back of the hand, and giving everybody a chance to present their witnesses and their exhibits, detailed findings of witness credibility. As Judge Agee points out, the standard here is relatively low, and the one mistake that was made here, which is the failure to set goals and criteria to the IEP team, which is what a lot of courts have done, because the IEP team is the one that's going to have the best view of the situation. They put a lot of time into it, but I guess overall, where treatment is inadequate, then there is nothing we can't pick apart, and we're asking for a standard of perfection that our cases don't require, and I can pick apart any of these hearings to say, oh, well, this little issue wasn't found, or this, or what have you, but there has to be a limit to this. We cannot run the Charlottesville-Mecklenburg schools from the bench. That's not our job, but all I'm saying is that in the spectrum of these hearings, the ALJ didn't do a perfect job, but the job that she did was doggone good. I know you don't agree with that, but given the time that was devoted to it, the list of credibility findings, and the fact that she was balanced and found for you on two issues, I mean, what do we expect from people? We're applying standards to these folks that, if they applied to us, we'd be making an error in everything we did. Your Honor, to respond to that, while we don't contest that the court hearing was held appropriately, we do contest and state that when we're talking about regularly made, the judge in this particular case did not include findings of fact on all issues. She only addressed two issues that were brought about in the case. Those being the ones that she actually ruled in our favor were issue one and two, and she gave enough detail to show that findings issue one and two were supported, specifically in her discussion where she notes that her own on-the-record comments concerning this issue at JA 383. Further than issue one and two, I can support issue one finding fact four, five, seven, eight, and nine, all lent to that issue. So she does support issue one and two specifically in her comments as well. The problem is the rest of the issues are not supported by findings of fact. You were starting to make an argument about the related services issue. Why don't you use that as an example and tell us what the problem is. Your Honor, so that's correct. Part of this case spoke about speech occupational therapy, related services for the individual. And that related service is not spoken about in her order. There is zero findings of fact as it relates to… The district court addressed it specifically. JA 676 and 677. It's time to take. Your Honor, the only thing I would say is not only do we have a related service, a service issue, when she weighs credibility of witness, she doesn't elaborate on it. There's no elaboration on witnesses of credibility. Not on top of that, she incorrectly names the witnesses. She names a witness of ours. Do we require explanations of credibility findings? Your Honor… Counsel, I've been… You know, we review credibility findings all the time. We don't require explanations of every credibility finding. And so, oh, well, this person's body language resists and this person's facial expression resists. The overall question, I thought your case had been given the back of the hand. But I just don't see that. When you get to the district court level, he's having a two-hour hearing on the summary judgment motion hearing. The ALJ's findings, they're pretty doggone thorough. I mean, this doesn't pass muster. We have set an impossible standard. And that's not where the case law goes. So, while the court sees them as fair, we would argue that they're cursory and conclusory. And there is case law to say that if they are cursory and conclusory, they shouldn't be given deference. And so, on appeal, courts must reject that. What about the related services? There wasn't any deference there because the district court did it on its own. What's wrong with that? So, if the district court looked at related services, then I would argue, though, that still the ALJ's order in a whole was cursory and conclusory. Right, but under the way we review these, I mean, it was a de novo review by the district court. The district court spent two pages on it, laid it out in some detail. You haven't told us what the error is here. You haven't, I don't recall anything in your brief that says the district court was wrong on this for reason one, two, or three. So, Your Honor, I mean, I guess we would argue that if a de novo review was done, the statement from the district court would include a large amount of findings of facts over a 10-day period. There was a large record in this case. And I don't think that was completed here. So, I don't know how much of a de novo review was actually completed. You know, that still stands as our argument. As far as also the remedy issue. We have a remedy issue here. We are literally sending a remedy back to the wrongdoer. The crux of this case was. So, what do you say the district court should have done? That would seem to be pretty much the linchpin of your argument on this point. So, I hope you have an answer. So, you know, I would think that the district court would have had to address remedy and given an answer to remedy. Did you tell the district court what you wanted for remedy? I believe that we at least spoke to that we did not want, did not think it was appropriate for the school to make the remedy, and that the remedy obviously needed to be least restrictive. So, you wanted the district court to make a remedy, but you as the proponent didn't offer to the district court a remedy for it to consider? Your Honor, I do believe we offered a remedy. And that remedy was that the court needed to decide where the least restrictive environment was. There was testimony as to what was appropriate for the student. And we needed the court to remedy the issue. Because the issue that we had at hand has not been remedied. It was sent back to the school. Well, counsel, what's wrong with sending it back to the IEP team? This is done all the time. And it's done for a good and sufficient reason. And that is the IEP team has spent loads and loads of time with this individual's case. And the district court's familiarity such as it is, is pretty good, but it's not perfect. I mean, it doesn't approach the IEP team. And the IEP team, for example, includes the plaintiff and the plaintiff's mother, which it certainly should. And it's up to the IEP team to address the missing criteria. But that's standard stuff. That's just nothing unusual about that. Your Honor, I would disagree with that. The way an IEP is set up is that the LEA, who is a school employee official, has the final say. By giving the wrongdoer it back and then having the final say, we are leaving least restrictive environment up to the school to decide. So if we get back to an IEP and we disagree again, it now creates a revolving door. We'll be right back at court on the same issue that the court did not answer or address when we initially brought it to the court. Right, but you didn't tell the district court, here's the remedy we want. Or if you did, you can show us where you did. They need to go to this school, take these courses, have this sort of therapy. It seems like to me you're saying that the district court was wrong, but we're not going to tell you what it should have done right. So, Your Honor, I cannot speak specifically if we wrote it exactly to the district court. It was in the initial petition. We requested what we were asking the ALJ to order at that point. You're going to have some revolve. All right, thank you. Ms. Leonard, we'd be pleased to hear from you. Thank you and good morning, Your Honors and counsel. with Campbell Shatley on behalf of Charlotte Mecklenburg School's Board of Education and may it please the court. There are two issues before this court and both should be affirmed. First, the administrative process in this matter was exactly how the process should happen. And second, the ALJ ordered an appropriate remedy as part of that regular process. Regarding the first issue, the parent's argument boils down to whether the findings of fact in the ALJ's decision were essentially long enough. The district court in this case followed this court's reasoning and Doyle v. Arlington County School Board, which reasoned that reviewing courts and deciding what weight to give an administrative decision should examine the way in which that decision should examine the way in which the administrative agency arrived at that decision and the methods employed. Here, as you know, there was a 10-day administrative hearing, non-consecutive days from January through March 2018. It was very much like a civil trial. I think we've admitted that your opinion here is rather short-term. I'm taking your argument as to where it seems like it's going is that you look at this holistically in terms of all that was done, the examination of witnesses, et cetera. I guess the question that comes up is, what is our view? And when we're looking at what the actual opinion is, it is pretty direct and curt. At least some of the issues seem to be there's not much there, and it wouldn't have taken much to do it. Let me ask you this. A lot of times on these cases, because the trial judge brought it up, these ALJs are really overworked. There's a lot of work to be done, so they're trying to do this. And so is it a practice in that particular jurisdiction for the council to hand up a proposed order or put this forth? Because there's a lot of work to do it. It's all there. And the question is, did this ALJ do enough? And you're saying when it comes on appeal, we can't just look at the opinion but look at all the other stuff. Is that the practice within this jurisdiction or not? Yes, Your Honor. It is the practice within the Fourth Circuit to look at the process as a whole. No, I mean practice within this jurisdiction in the Charlotte area when the ALJ renders a decision or anywhere for it to hand up an order, a proposed order that would sort of lay it out. The ALJ then can sort of track it if they want by the prevailing party. Yes. I guess that's both. Yes, Your Honor. In North Carolina in particular, ALJs do ask both parties to submit proposed orders. The ALJ did that in this case as well in March 2018. Was there an order that was put up by you, I guess? This is actually how much does it track that draft order that was there? Was there an order that was put forth and then ALJ then redacted it to be nothing? Or was there one that had a lot more into it? The ALJ's final decision actually tracked the parent's proposed order more than CMS's proposed order. Both proposed orders from both parties were not substantially longer than the ALJ's final decision. The parent's proposed— So are you representing that this order looks a lot like the proposed order that was put up by the parents? Yes, Your Honor. Of course, that's not in the record what the actual proposed order is. But, I mean, let's deal with reality here because of just the sheer workload here. And Judge Wilkerson points out rightly, I mean, we want to be able to try to not overburden but at the same time when it becomes the reality that, you know, the parties are allowed to submit a proposed order. And I guess I'm trying to understand how does this final order compare with what was proposed in the process when we are confronted with the question of whether enough was done in order to be able to set it forth. But you wouldn't expect the parents to be able to give the reasoning behind why the ALJ operated in a particular way. You would expect that more to come from the party that prevailed, wouldn't you? Yes, Your Honor. It was very clear at this administrative hearing that the issue of the student being in a separate school was of central importance to the ALJ. And that is the sections from the parents' proposed order that the ALJ's final decision reflects. That's because the ALJ determined that that was not the least restrictive alternative or that there were no criteria by which to judge whether it was the least restrictive. Yes, there was no criteria to judge how the student would exit that placement. There was no finding that the placement at the public separate school was substantively inappropriate, just that there was a lack. Let me ask you on that. I think I'm probably trying to lose because I'm trying to understand. This is a sensitive thing. When you look at it, I think the IEPs and the groups are doing, I think they're doing the best. It's a very sensitive situation in which you've got the student and the federal law mandates certain things because of the money you're getting. And ultimately here, she initially was in a situation where she's in with students who are not in a disabled situation or not. And then this decision has to be in a separate, because of the behavioral situation, has to be in a separate situation. So what do you view the parents asking for now? To be put back where she was or to be put somewhere different? I mean, what is it that they, in light of all that's here, that's pretty clear why she was put here. But what do you view them as asking? So in both the parents' original administrative due process petition and in parents' federal complaint, in those separate requests for relief, the parent requests exactly what the ALJ has already ordered. In both of those requests for relief, the parent requested an order for CMS to convene an IEP team and develop an appropriate IEP. Is that the remedy that I was asking opposing counsel to find? Yes, Your Honor. And that is exactly what the ALJ ordered. It is such a common, equitable remedy that parent requested it in both the administrative agency and with the federal court. So as the result, they're not happy with it. Not the remedy, I guess. What is it? Where's the unhappiness from your view? The parent made multiple requests in their request for relief at the administrative hearing. In addition to asking for an order for CMS to develop an appropriate IEP, they also requested either private school placement or placement at a regular CMS high school. If the ALJ had found that the placement at the public separate school was inappropriate, she could have ordered that relief. But she did not find that the placement at the public separate school was inappropriate, just that there needed to be criteria within the IEP to know when the student could leave that public separate school. Regarding JP, CMS also believes JP is controlling in this case with respect to the findings of fact. The ALJ's administrative decision in this case is more detailed than the administrative decision in JP. In JP, the hearing officer found all witnesses had credibility. In this case, the ALJ was specific with who she found more credible on all issues. She found four of CMS's six witnesses more credible and one of parent's nine witnesses more credible. And that shows she took careful consideration of credibility and persuasiveness into account. In JP also, the administrative decision offered no explanation for why the hearing officer in that case found the school district's evidence more credible or persuasive. None of those deficiencies were sufficient for the Fourth Circuit to determine that that administrative decision was due the deference that it was owed. And in this case, there were multiple findings with respect to multiple contested issues. One thing, counsel, one thing I would suggest, you know, we've been on a number of cases where we've actually upheld ALJ findings that were, and I can only say after reviewing the process and the findings and the care taken by the ALJ and the care taken by the district court, I only wish that in most cases the process had been this good. Does that mean it's perfect? Does that mean it can't be picked apart? No. But I really, I only wish that most hearings dealing with this very important legislation, I only wish they had been this good. Thank you, Your Honor. And I agree. With respect to Issue 3, the final administrative decision, the findings of Fact 2, 8 and 9, 14 and 16 address Issue 3. With respect to Issue 4, Fact 5. When you're going through these, just tell us real quickly which, because they're using the number, what the issue is. So, Issue 3 is about whether CMS developed and implemented appropriate behavior interventions. Issue 4 was whether CMS developed appropriate IEPs during the 16-17 school year, except as to least restrictive environment, and Facts 5, 14 and 16 address that issue. Issue 5, with respect to related services, as you have noted and as explained at the district court, there was not an implicit finding with respect to related services, but there were ultimate findings on witness credibility and an ultimate finding on the issue itself. And those are Facts 14 and 16. With respect to the issue about whether the parent meaningfully participated in IEP meetings and whether CMS predetermined placement, Stipulated Fact 24, Fact 6, 10 and 14 address that issue. And the last issue regarding whether CMS was not required to provide independent educational evaluations, Stipulated Facts 10 through 16, 18 through 20, and Fact 14 and Fact 16 address that issue. I also want to point out the North Carolina Administrative Code specifically states it is within the ALJ's discretion whether to include a memorandum giving reasons for findings of fact and conclusions of law. The district court's order in this case also cites to record evidence, not the ALJ final decision, and it's almost four pages of facts. The district court did not simply rely on the ALJ's decision. The parent's two issues on appeal with this court are covered in three and a half pages of the 27 pages of the district court's order. Fourteen pages of the district court's order are dedicated to the substantive faith issues presented at the summary judgment hearing. And again, the district court's order cites to administrative record evidence and does not rely on the ALJ's decision. Due to the carefulness and consideration of the district court's de novo review, the district court's order granting CMS summary judgment and dismissing the parent's complaint should not be disturbed on appeal. Regarding the second issue on appeal with the remedy, an administrative hearing officer has authority to grant relief as the hearing officer determines appropriate. And as discussed today, the hearing officer did not find the more restrictive current placement was substantively inappropriate, but that lack of criteria needed to be in there for a return to a lesser restrictive placement. Once the ALJ determined that the IEP developed for that particular school year was deficient for that lack of criteria, the ALJ appropriately ordered the IEP team to convene to add that criteria. CMS was not at liberty to ignore the ALJ's order, and there is no evidence in the record of any subsequent disagreement amongst the IEP team regarding the ALJ's order remedy. This court has approved of a similar result in Morgan v. Greenbrier County Board of Education, holding that there was no error when the administrative hearing officer concluded that a student's IEP was inappropriate, and in lieu of ordering a different placement, which is what the Greenbrier parents had requested, the ALJ directed the IEP team to meet and prepare an appropriate IEP. The parent's position on this issue would create an unworkable legal standard under which ALJs and district court judges will have to draft compliant portions of IEPs in response to any finding that the existing IEP is faulty, oftentimes months or years after the contested IEP is before them. Such a position is directly contrary to the Supreme Court's Rally and Andrew F. Warnings and this court's precedent to not substitute a judge's own notions of sound educational policy for those of school authorities. CMS requests this court affirm the district court's order on the party's motions for summary judgment because the ALJ's decision in this case was regularly made and entitled to deference, and the ALJ's ordered remedy at the administrative stage was within her discretion and appropriate. Those are my prepared remarks. I'm happy to answer any questions. I have one question or comment in terms of the case. I think Judge Wilkerson has postured it somewhat correctly. There's a lot that was done in this case, hearings and all that's going on. Ultimately, this opinion that was issued is pretty, as the district court says, lacking in detail. It's short shrift. But the district court says, you know, the ALJ's operate on a tight time constraint. They can't be expected to issue opinions like district court judges. Fair enough. But you told me that the parties actually cannot draft opinions, draft orders. Not required, but in this instance, this was a practice. And so I would suggest, because of the sensitivity of a case like this, is dealing with young children and parents who are doing their level best to ensure this child that has a genetic situation. She didn't cause it to happen. None of them caused it to happen. Very sensitive situation. She wants her child to get the best education possible with this disability. That when that opinion comes out, I think it needs to reflect some detail more than, well, that's just the way it is sort of thing. And while I agree, there's not much constraint, there's time constraints on the ALJ. I do think that it is important that as the parties, when you are handing up these orders, draft orders, ALJ may agree with it or not. But give them something to work with that they can fashion out an opinion that will give at least, maybe not comfort, but at least some good explanation why it's done. Because they don't remember the witness. They don't remember that. All they know is they see this opinion. It's like, well, you know, it's like sometimes the judge says your case is denied. Didn't see another word. You know, lawyers can handle that. We understand that. But when you're dealing with everyday citizens and the sensitivity and emotion there, I think there ought to be more in that opinion. I'm not saying this at the point of reversible here, but I'm saying that. And maybe that's something we, I don't want you to leave with the feeling that we blessed this process because, and that now we're going to see these little short opinions with not much detail because you did all the other stuff. Because they are. This is pretty high emotional stuff. And I think that's that that requires I hope you will follow me on this in terms of future conduct is what I'm trying to say that will inform. It might keep this out of our courtroom, too, in terms of the future. I appreciate that, Your Honor. Any further questions? No questions. Thank you very much, counsel. We'll turn back over to rebuttal. Your Honor, so the question to do we ask the court the best that I could find as my Internet's working lovely over here is starting at J. A. 98 to 101. That is actually our prayer for relief in the initial complaint that was filed under the ALJ. Nowhere in there do we simply ask for an IEP meeting. And I think it's relevant that the court understands that a parent can ask for an IEP meeting that was 98, 98 to 101. And that's part of your complaint in the district court. That's correct. And I do think it's relevant to understand this court to understand that a parent has a right to ask for an IEP meeting if they want to every day of the week. So to go to court and go through 10 days of litigation to just be requesting an IEP meeting would would not really be a good idea for any client to do that. I know there's an argument on 45 days and a timeline to that 45 days is statutorily set. We do hand up orders to these judges and our orders are very detailed when we bring them to present to the judge. This judge in particular seems to have taken parts of our order because she found for issues one and two. But where we think she failed is where the other issues, whether it was because she didn't find in our favor or whatever it may have been. We just think that she really does not address them. I know that she just argued that there are points that the court did address and she went through the findings of facts and the numbers that they correlated to. However, Your Honor, I did go back and review that. And what I found was. Your Honor, give me one second. What I actually found was that many of those issues. So the school states that the ALJ did make findings of fact for respect to issue three and they cited to fact eight, nine and 16. 16 in and of itself is a conclusion of law. It's not even a finding of fact. As well as eight speaks to behavior and not least restrictive. And nine, while it speaks to least restrictive, it doesn't address the third issue at hand. The school then argues that issue four was addressed. And again, fact five talked about least restrictive and 16 is a conclusion of law. Then they say issue 16 was met. By saying that the facts were 10 and 16. 10 does not speak to parental participation, which is what issue six was. So I've looked through those pages of the appendix that you recited. And the district court's relief for you on the first two issues was for the establishment of a framework or criteria to determine going forward what's the least restrictive alternative for the student. So that would be the remedy. But I'm not seeing anything in your prayer for relief that where you tell the district court how to arrange that. So in our prayer for relief, I believe we ask for private placement because we feel that that would have been an appropriate remedy. However, that was not given to us. Right. But the relief that you got was determined criteria. So we know what the benchmarks are to determine the least restrictive environment. That's the remedy you've got. So it seems like that if you say that remedy is inadequate, you would have needed to tell the district court how it was to come up with that framework. Make that determination. That's what I'm not seeing. And I would agree that I believe we did not speak to that. I do feel like, as we stated earlier, the remedy being given back to the school causes a bigger issue since we were we couldn't agree on it in the first place. I'd also like to bring to the court's attention that when the court that no deference to a decision that doesn't address critical issues is to be given. And I think it's clear in this case, there's a lot of critical issues that weren't addressed. There were seven issues raised. And it's our argument that really only two were addressed at a very bare minimum. When we look at things regularly made, I think the court really needs to look to J.P.'s case. J.P. is very similar to our case. But in J.P., they did much more. They summarized the witness testimony, although it was very short. They also outlined the legal applicable standards and they found findings of facts and legal conclusions. The only clue here, when she spoke about witness credibility, was that one set of witnesses was more credible than the other in this matter. We would argue as a vague reference to credibility. It doesn't really speak to why she came to that finding. All right. Thank you. Thank you very much, counsel.
judges: J. Harvie Wilkinson III, G. Steven Agee, James Andrew Wynn